1

2

3

4

5

6

7                     UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10  NORTHERN CALIFORNIA RIVER          Case No.  10-cv-05105-MEJ
    WATCH,

11                 Plaintiff,          **ORDER RE MOTION TO DISMISS**
                                       **FOURTH AMENDED COMPLAINT**
12          v.
                                       **ORDER RE MOTION TO INTERVENE**
13  FLUOR CORPORATION,
                                       Dkt. Nos. 106, 121
14                 Defendant.

15

16                          **INTRODUCTION**

17        Plaintiff Northern California River Watch ("RW") brought this action pursuant to the

18  federal Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA"), and the

19  federal Clean Water Act, 33 U.S.C §1251 *et seq.* ("CWA" or "the Act"), against Defendant Fluor

20  Corporation, alleging violations of both statutory schemes arising out of Fluor's past industrial use

21  of real property located in Windsor, California.  Thereafter, The Shiloh Group ("TSG"), which

22  owns 28 acres situated on the western-most portion of the property, filed a motion on October 24,

23  2013, seeking to intervene as a plaintiff in this action pursuant to Federal Rule of Civil Procedure

24  ("Rule") 24.  Dkt. No. 121.  Also pending before the Court is Fluor's Motion to Dismiss ("MTD")

25  RW's Fourth Amended Complaint ("FAC").  Having carefully considered the papers submitted

26  and the pleadings in this action, and for the reasons set forth below, the Court hereby GRANTS

27  TSG's Motion to Intervene and GRANTS IN PART and DENIES IN PART Fluor's Motion to

28  Dismiss.

**BACKGROUND**

**A.     Motion to Dismiss**

This is a citizen's enforcement action brought by RW, a non-profit organization dedicated to protecting, enhancing, and helping to restore the water environs of California, including its drinking water sources, groundwater, rivers, creeks and tributaries.  FAC ¶ 11.  RW brings this suit under the citizen suit enforcement provisions of the RCRA, specifically RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), and RCRA § 4005; 42 U.S.C. § 6945, to stop Fluor from alleged ongoing violations of the RCRA.  *Id.* ¶ 1.  RW also seeks relief under the CWA, specifically 33 U.S.C. §§ 1311, 1342, and 1365, to stop Fluor from alleged and ongoing violations of the CWA.  *Id.* ¶ 5.

RW alleges that Fluor has violated various provisions of the RCRA and the CWA with respect to a site located on a portion of the Shiloh Industrial Park in Windsor, California (the "Site").  *Id.* ¶ 22.  RW seeks declaratory and injunctive relief to prevent future violations, the imposition of civil penalties, and other relief based on Fluor's alleged violations of the RCRA and CWA.  *Id.* ¶¶ 4, 8.

RW alleges that Fluor owned and operated the Site from 1955 to 1972, during which time it operated several industrial manufacturing and chemical treatment operations.  *Id.* ¶ 23.  Two sites are specifically identified in the FAC.  The first is the Tower Site, which is currently being remediated by Ecodyne Corporation under the supervision of the Regional Water Quality Control Board ("RWQCB").[1]  *Id.* ¶ 26.  The second is the Pond Site, which is being remediated by Fluor, under the supervision of the California Department of Toxic Substances Control ("DTSC").  *Id.* ¶¶ 26, 46.

In the FAC, RW alleges that Fluor used the Pond Site to manufacture processing tanks, cross arms, and cooling towers, as well as to treat wood products.  *Id.* ¶ 23.  RW alleges that Fluor manufactured and treated these materials on the Pond Site in a dip treatment shed and a kiln building.  *Id.*  RW further alleges that the treatment shed contained two tanks that held

---

[1] RW dismissed Ecodyne as a defendant on June 12, 2013.  Dkt. No. 104.

2

1   pentachlorophenal ("PCP"), two tanks containing creosote, and four tanks containing lead.  *Id*.

2   RW alleges that wooden or metal platforms were built around the tanks, and that a concrete slab

3   existed approximately two feet below these platforms, which was angled towards the southwest

4   end of the building, though the slab did not run the entire length of the shed.  *Id*.  RW alleges that

5   the slab was bermed around the perimeter of the shed, with openings on the southwest end,

6   allowing spilled liquids to drain off the end of the slab onto the dirt floor.  *Id*. ¶ 24.  RW alleges

7   that these spilled chemicals were then pumped to unlined evaporation ponds, and that these ponds,

8   along with tanks, equipment, and drying tower, were the original sources of hazardous waste that

9   was introduced into the soil at the Pond Site.  *Id*.  RW further alleges that the PCP, creosote, lead,

10  arsenic turned the soil into solid hazardous waste, which is still discharging toxins into a waterway

11  of the United States.  *Id*. ¶¶ 23, 40.

12      RW also alleges that Fluor operated a paint shop outside of the Pond Site from 1962 to

13  1970, and that the operation of the paint shop introduced toxins such as lead, cadmium, mercury,

14  tin, copper, arsenic, asbestos, DDT, and polychlorinated biphenyls ("PCBs") into the environment.

15  *Id*. ¶ 25.

16      In addition, RW alleges that the only area of the Site that Fluor has "remediated, or ever

17  attempted to remediate" is the Pond Site.  *Id*. ¶ 26.  Historical photos show "teepee" burners,

18  which were used to burn wood and debris, being operated outside of the Pond Site.  *Id*.  RW

19  alleges that residual solid and hazardous materials from the paint shop and teepee burners remain

20  in the soil and groundwater.  *Id*.  Product was moved and stored throughout the Site, causing

21  chemicals to be deposited in areas outside of the Pond and Tower Sites, and those locations have

22  yet to be investigated or remediated.  *Id*.  Recent samplings of the canal connecting to Pruitt Creek

23  demonstrate the presence of lead, copper, zinc, and polynuclear aromatic hydrocarbons ("PAHs").

24  *Id*.  RW alleges that Fluor, in the course of doing business on the Site, has discharged, and

25  continues to discharge, pollutants to surface and ground water at the Site.  *Id*. ¶ 27.

26      Sometime in November of 2011, the RWQCB informed TSG, the current owners of the

27  Site, that hazardous levels of lead and copper were found in the canal downstream from the former

28  Pond Site, which leads to Pruitt Creek.  *Id*.  A February 27, 2012 Trans Tech report, entitled

3

"Summary Report of Findings" by Trans Tech Consultants, prepared for TSG, strongly implied Fluor's prior operations as the source of the lead. *Id.*

RW alleges that Fluor's handling, use, transport, treatment, storage, or disposal of pollutants at the Site occurred in a manner which has allowed significant quantities of hazardous constituents to be discharged to soil, ground, and surface waters beneath and around the Site and adjacent properties off site. *Id.* ¶ 28. At present, RW alleges that the levels of pollutants in the groundwater at the Site remain high above the allowable Maximum Contamination Levels, Water Quality Objectives, and Public Health Goals for these constituents, and thus may be creating an imminent and substantial endangerment to public health or the environment. *Id.* ¶ 29. RW further alleges that the pollutants in the soils remain above the applicable Environmental Screening Levels and thus may be creating an imminent and substantial danger to public health or the environment. *Id.*

RW further alleges that Fluor has discharged or is continuing to discharge hazardous waste on the Site in violation of the RCRA. *Id.* ¶ 30. RW believes that Fluor has known of the contamination at the Site for more than 30 years, and is also aware that continuing discharges or failure to remediate the pollution allows the contamination to migrate through the soils and ground water at or adjacent to the Site, or to continually contaminate actual or potential sources of drinking water, as well as ground or surface waters. *Id.* It alleges that the violations are continuing to this day. *Id.*

Last, RW alleges that Fluor has discharged pollutants from the Site to waters of the United States without a National Pollutant Discharge Elimination System ("NPDES") permit, in violation of CWA § 301(a), 33 U.S.C. § 1311(a) and CWA § 402(a) and (b), 33 U.S.C. § 1342 (a) and (b). *Id.* ¶¶ 31, 32. RW alleges that Fluor is discharging pollutants, including lead, copper, zinc, and PAHs from the Site and various point sources within the Site to waters of the United States. *Id.* ¶ 33. The originating point sources were the tanks, teepee burners, equipment and ponds described above. *Id.* ¶¶ 26, 33. The Pond Site is directly adjacent to the canal on the Site and to wetlands adjacent to the canal. *Id.* ¶ 33. Materials are alleged to have moved from the Waste Pond to the canal. *Id.* The canal is directly connected to a water of the United States (Pruitt Creek). *Id.*

United States District Court
Northern District of California

Moreover, RW alleges these point sources continue to discharge to discrete conveyances connected to waters of the United States. *Id.* These point sources include roads, sewer lines (including a lateral that runs through the plume), and drainage ditches on the Site which discharge directly to the culvert adjacent to the Site, which in turn discharges to Pruitt Creek. *Id.* RW further alleges that these additional point sources also continue to discharge from the Site to surface waters adjacent to the Site. *Id.* It alleges that the violations are continuing to this day. *Id.*

The range of dates covered by the allegations is the period between August 1, 2007 and August 1, 2012, as designated by the August 1, 2012 Notices of Violations and Intent to File Suit Under the RCRA and CWA attached to the FAC. *Id.* ¶¶ 30, 33. The violations of the CWA, including discharging pollutants to waters of the United States without an NPDES permit, failure to obtain an NPDES permit, failure to implement the requirements of the CWA, and failure to meet water quality objectives, are alleged to be continuous and ongoing. *Id.* ¶ 34.

**B.      Motion to Intervene**

TSG owns 28 acres of real property in Windsor, California. Nelson Decl. ¶ 1, MTI[2], Dkt. No. 121. TSG's property lies on the western-most portion of the former Fluor site. *Id.* When TSG purchased the property in 1999, TSG was aware that Fluor was in the process of cleaning up the area known as the Pond Site under the supervision of the DTSC, which lies on the property. [3] *Id.* at ¶ 1. This site exhibits mainly lead contamination. *Id.* ¶ 5. TSG believes that Fluor caused the lead and other contamination at the Pond Site. *Id.* ¶ 1. TSG was also aware that Ecodyne was also cleaning up the adjacent Tower Site under the supervision of the RWQCB. *Id.* The Tower Site exhibits mainly hexavalent chromium contamination. *Id.* ¶ 5.

---

[2] This declaration is appended to TSG's Motion to Intervene, but is not marked with an exhibit number.

[3] Fluor moves to strike portions of the declarations of Thomas Nelson and Brian Carter, in support of TSG's Motion to Intervene. Dkt. No. 124. TSG filed an Opposition to the first motion to strike. Dkt. No. 127. Fluor also moves to strike portions of the declaration of Brian Carter in support of TSG's Reply brief, which TSG did not oppose. Dkt. No. 129. At this stage of the proceedings, the Court finds it is appropriate to consider the declarations for the limited purpose of evaluating TSG's reasons for moving to intervene in this action. The Court will not consider the matters alleged in the declarations as they relate to issues of liability, or for the truth of the facts asserted with respect to the cause and extent of the pollution. Accordingly, the Motions to Strike Portions of TSG's Declarations are DENIED.

United States District Court
Northern District of California

1       On August 19, 2013, TSG informed Fluor it intended to file a motion to intervene in order

2  to oppose the pending Motion to Dismiss the FAC.  Donnelly Decl. ¶ 1, Ex. 1, Opp'n to MTI, Dkt.

3  No. 123.  On August 21, 2013, Fluor's counsel participated in a conference call with counsel for

4  TSG and RW, at which Fluor proposed a stipulation to continue the hearing on the Motion to

5  Dismiss until after the Court decided TSG's proposed Motion to Intervene.  *Id*. ¶ 4.  Fluor then

6  drafted and emailed the Stipulation and Proposed Order to TSG and RW.  *Id*. ¶ 5.  On August 23,

7  2013, TSG declined to enter into the stipulation.  *Id*. ¶ 6.  On September 9, 2013, TSG served a

8  Notice of Violation and Intent to File Suit under the Comprehensive Environmental Response,

9  Compensation and Liability Act ("CERCLA").  *Id*. ¶ 7.

10       The basis for TSG's claims arose from its discovery in late 2011 that a RWQCB employee

11  had detected lead and other metals at elevated levels in storm water exiting a concrete lined ditch

12  ("Ditch") that forms the western boundary of the TSG property.  *Id*. ¶ 3.  The RWQCB "urged"

13  TSG to promptly cleanup the earth and material in the Ditch.  *Id*.  The cleanup of the contaminated

14  earth cost TSG over $117,000.00 to complete.  *Id*.  TSG requested reimbursement from Fluor and

15  Ecodyne because it believed they were responsible for the contamination, but both refused.  *Id*.

16       TSG asserts that Fluor refused to reimburse TSG because Fluor believes that the lead in the

17  soil at the Pond Site is firmly attached to the soil, beneath a thick layer of clean fill and capped by

18  asphalt.  *Id*. ¶ 5.  TSG contends that the asphalt is cracked and does not fully cover the site.  *Id*.

19  TSG's environmental consultant conducted independent tests in June of 2013 that showed

20  elevated lead in multiple locations.  *Id*.  TSG provided these test results to Fluor, and again

21  requested reimbursement, but Fluor refused.  *Id*.  TSG then sent Fluor a CERCLA notice/demand

22  letter.  *Id*.

23       TSG additionally asserts that it believes the DTSC's supervision of Fluor's cleanup efforts

24  are deficient, given that the site has been under DTSC supervision since 1989, yet lead was still

25  found in elevated levels in 2011.  *Id*. ¶ 6.  TSG thus intends to send CWA and RCRA

26  notice/demand letters to Fluor to address this issue.[4]  *Id*.  TSG is aware that RW has asserted

27

28  [4] TSG will then seek to amend its Complaint to include those claims when the relevant notice periods have expired.  Nelson Decl., ¶ 6, MTI.

claims against Fluor under both the RCRA and CWA; however, TSG maintains that RW is not capable of seeking recovery of TSG's expenses to remove the hazardous, contaminated earth from the Ditch. *Id*. ¶ 7.

TSG now seeks to intervene in order to (1) participate in the litigation and/or resolution of RW's claims against Fluor, (2) to enforce against Fluor TSG's rights and state law claims within this Court's pendent jurisdiction, and (3) to enforce against Fluor TSG's rights and claims under federal law once those claims are ripe. TSG asserts the following causes of action: (1) contribution for cleanup costs (Cal. Health & Safety § 25363); (2) negligence; (3) trespass; (4) private nuisance; (5) declaratory relief; (6) tortious breach of covenant of good faith and fair dealing; and (7) to obtain injunctive relief. MTI, Dkt. No. 121.

**PROCEDURAL HISTORY**

**A.    Motion to Dismiss**

On November 10, 2010, RW filed this lawsuit pursuant to the RCRA and CWA against Ecodyne, alleging that Ecodyne violated various provisions of these statutory schemes with respect to the Site. Dkt. No. 1. On April 19, 2011, RW filed its First Amended Complaint. Dkt. No. 31. Ecodyne moved to dismiss the First Amended Complaint, which the Court granted in part and denied in part. Dkt. No. 46. On August 10, 2011, RW filed its Second Amended Complaint. Dkt. No. 47. On July 26, 2012, RW advised Ecodyne that it intended to file an amended complaint to add Fluor as a defendant and sought Ecodyne's consent, which Ecodyne declined.

On August 1, 2012, RW served Notices of Violation and Intent to File Suit Under the CWA and RCRA on Ecodyne and Fluor. Dkt. No. 73. RW then moved to amend the complaint to add Fluor as a defendant on August 6, 2012. Dkt. No. 53. In its motion, RW advised the Court that it would seek leave to further amend its complaint to add the new allegations contained in the August 1 Notice once the 90-day notice period expired. *Id*. Because the Court found that evaluating a full version of RW's proposed amendments was more efficient than addressing two separate motions to amend, it denied the motion without prejudice. Dkt. No. 59. Accordingly, on November 14, 2012, RW filed a motion seeking leave to file a Third Amended Complaint ("TAC") adding Fluor as a defendant. Dkt. No. 72. The Court granted RW's motion, and RW

1  filed its TAC on January 15, 2013.  Dkt. No. 73.

2       In its TAC, RW asserted claims against both Fluor and Ecodyne for: (1) imminent and

3  substantial endangerment to health or to the environment pursuant to 42 U.S.C. § 6972(a)(1)(B);

4  (2) creating an imminent and substantial endangerment to health or the environment pursuant to

5  42 U.S.C. § 6972(a)(1)(B) based on open dumping in violation of 42 U.S.C. § 6945(a); and (3)

6  violation of the CWA § 301 (discharge of pollutants from a point source without a NPDES permit

7  – 33 U.S.C. §1342(a) and (b), 33 U.S.C. § 1311).  *Id.*

8       Fluor thereafter moved to dismiss the TAC on the grounds that: (1) RW failed to plead

9  sufficient facts showing that Fluor released, disposed of, or discharged any chemicals causing any

10  imminent or substantial endangerment to health or the environment in violation of the RCRA; (2)

11  RW failed to satisfy the jurisdictional prerequisites for CWA and RCRA claims under Rule

12  12(b)(6); and (3) dismissal was appropriate under the doctrine of primary jurisdiction due to the

13  current supervision of the Site by the DTSC.  Dkt. No. 81.  The Court granted Fluor's motion to

14  dismiss regarding the lack of sufficient facts in RW's TAC, simultaneously granting RW leave to

15  file a Fourth Amended Complaint.  Dkt. No. 105.  The Court admonished RW that it was

16  disinclined to grant any further leave to amend given that this action has been pending for over

17  two years and has yet to move past the initial pleading stage.  *Id.*

18       On June 24, 2013, RW filed the operative FAC.  Dkt. No. 106.  RW again asserts the

19  following claims against Fluor for: (1) imminent and substantial endangerment to health or to the

20  environment pursuant to 42 U.S.C. § 6972(a)(1)(B); (2) creating an imminent and substantial

21  endangerment to health or the environment pursuant to 42 U.S.C. § 6972(a)(1)(B) based on open

22  dumping in violation of 42 U.S.C. § 6945(a); and (3) violation of the CWA § 301 (discharge of

23  pollutants from a point source without an NPDES permit – 33 U.S.C. § 1342(a) and (b), 33 U.S.C.

24  § 1311).  FAC ¶ 1.

25       Fluor now moves to dismiss the FAC on several grounds.  As to RW's first claim under the

26  RCRA, it argues that RW has again failed to plead sufficient facts alleging an imminent and

27  substantial endangerment regarding both the Pond Site, which is currently being remediated under

28  a Consent Order by the DTSC; and the Tower Site, currently under the supervision of the

United States District Court
Northern District of California

8

RWQCB.  MTD at 2.  Fluor contends that because both the Tower Site and the Pond Site are currently under supervised remediation, RW cannot meet their burden of showing imminent and substantial endangerment as required under the RCRA.  *Id*.  Fluor next argues that RW's second RCRA claim for open dumping fails because § 6945 does not apply to wholly past activities by prior owners or operators, and Fluor ceased all operation and ownership of the site in 1972.  *Id*.  Last, Fluor argues that this Court lacks jurisdiction over RW's third claim under the CWA because it does not create liability for wholly past violations.  *Id*. at 2-3.  Fluor further argues that even if this Court did have jurisdiction, Plaintiff has failed to state a claim because the CWA does not hold defendants liable for unpermitted discharges prior to the implementation of the NPDES permit.  *Id*. at 3.  Fluor additionally argues that dismissal is appropriate pursuant to Rule 12(b)(1) as to RW's RCRA and CWA claims outside of the Pond and Tower Sites, because RW failed to satisfy the jurisdictional notice prerequisites for these claims.  *Id*. at 10, 12, and 14.

RW filed an Opposition on August 26, 2013 (Dkt. No. 113), and Fluor filed a Reply on September 3, 2013 (Dkt. No. 117).  Fluor also filed objections to the declaration of RW's counsel, Jack Silver, and a motion to strike portions thereof.  Dkt. No. 119.  The Court heard oral argument on September 26, 2013, and took the matter under submission.

**B.      Motion to Intervene**

On October 3, 2013, TSG filed a motion seeking to intervene as a plaintiff in this action pursuant to Federal Rule of Civil Procedure 24.  Dkt. No. 121.  Fluor filed an Opposition on October 17, 2013 (Dkt. No. 122), and TSG filed a Reply on October 24, 2013 (Dkt. No. 126).  Fluor also filed a Motion to Strike Portions of the Declarations supporting the Motion to Intervene and the Reply.  Dkt. Nos. 124, 128.  TSG filed an Opposition to the first Motion only (Dkt. No. 127), to which Fluor filed a Reply (Dkt. No. 129).

**MOTION TO DISMISS**

**A.      Request for Judicial Notice**

As part of its Motion, Fluor seeks judicial notice of Exhibits A through H, regarding the ongoing remediation the Pond Site.  RJN, Dkt. No. 111.  Generally, on a motion to dismiss, courts limit review to the contents of the complaint and may only consider extrinsic evidence that is

United States District Court
Northern District of California

properly presented to the court as part of the complaint.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (court may consider documents physically attached to the complaint or documents necessarily relied on by the complaint if their authenticity is not contested).  However, a court may take notice of undisputed "matters of public record" subject to judicial notice without converting a motion to dismiss into a motion for summary judgment.  *Id.* (citing Fed. R. Evid. 201; *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).

Under Rule 201, a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *see also Lee,* 250 F.3d at 689.  These judicially noticed documents may only be considered for the limited purposes of proving their existence and content, but not for the truth of the matters asserted therein.  *Allstate Ins. Co. v. Pira*, 2012 WL 1997212, at *4(N.D. Cal. June 4, 2012).

Exhibits A, B, E, and F contain consent orders and remediation requirements issued by the DTSC and RWQCB.  These exhibits are public agency records, which are incorporated by reference into RW's Complaint, and RW does not dispute their authenticity.  RW does not oppose the request with respect to these exhibits.  Accordingly, the Court GRANTS Fluor's request and takes judicial notice of Exhibits A, B, E, and F.

RW objects to Fluor's request with respect Exhibits C, D, G, and H.  Opp'n to RJN, Dkt. No. 115.  Exhibits C and D are letters from the DTSC to TSG's counsel, Brian Carter of Carter, Momsen, and Knight LLP, dated August 15, 2012 and November 19, 2012 respectively.  Exhibits G and H are letters from Beth Lamb of the RWQCB to Ray Avendt of the Ecodyne Corp./The Marmon Group, dated October 7, 2010 and February 29, 2012 respectively.  RJN at 2.  RW argues that Exhibits C, D, G, and H do not fulfill the requirements of Rule 201(b) because they contain factual assumptions and conclusions open to question, are hearsay, and are unreliable.  Opp'n to MTD at 2-3.  Thus, while potentially admissible, RW argues that these exhibits are not judicially noticeable.  *Id.* (citing *Keith v. Volpe,* 858 F.2d 467, 481 (9th Cir. 1988)).  Fluor, in its Reply, clarifies that it does not seek notice of the truth of any of the matters contained in the letters, only the fact that the agencies have drawn certain conclusions, relied on certain findings, or identified

United States District Court
Northern District of California

1  plans regarding the Tower and Pond Site remediation, which as a matter of public record are not

2  reasonably subject to question.  Reply to RJN, Dkt. No. 118.

3      Because these documents are matters of public record, the Court finds that the letters

4  contained in the DTSC and RWQCB's publicly accessible files, as set forth in Exhibits C, D, G,

5  and H, are proper subjects of judicial notice under Rule 201.  The Court will consider the letters

6  for the limited purpose of establishing that: (1) the DTSC has investigated site conditions; (2) the

7  DTSC has concluded that groundwater remediation is unnecessary at the Pond Site, (3) the DTSC

8  is overseeing a soil remediation plan at the Pond Site, and (4) that the RWQCB is overseeing

9  Ecodyne's approved groundwater remediation plan at the Tower Site.  The Court will not consider

10  whether the statements, test results, or conclusions contained in the letters are true.  *Coal. for a*

11  *Sustainable Delta v. Fed. Emergency Mgmt. Agency*, 812 F.Supp.2d 1089, 1093 (E.D. Cal., 2011)

12  (factual information asserted in public agency documents cannot be used to create or resolve

13  disputed issues of material fact).

14      The Court thus GRANTS Fluor's Request for Judicial Notice in its entirety.

15  **B.**    **Fluor's Motion to Strike Portions of the Silver Declaration**

16      Fluor objects to and moves to strike the evidence contained in paragraphs 3 through 6 of

17  the Declaration of RW's counsel, Jack Silver filed in response to the Motion to Dismiss.  Evid.

18  Objections & Mot. to Strike Testimony, Dkt. No. 119.  The Court does not rely on this evidence

19  for the substance of its ruling on the Motion to Dismiss, as the relevant inquiry is whether RW has

20  properly alleged the elements of the claims it seeks to assert against Fluor, not whether RW has

21  provided admissible evidentiary support for those claims.  The Court relies entirely on the FAC

22  and additional materials appropriately incorporated by reference or a matter of judicial notice in

23  making its determination.  *See Lee*, 250 F.3d at 688-89; *MGIC Indem. Corp.*, 803 F.2d at 504.

24  Accordingly, the Court DENIES Fluor's Motion to Strike as moot.

25  **C.**    **Legal Standards**

26      1.  <u>Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(1)</u>

27      Pursuant to Rule 12(b)(1), a party may raise a challenge to the existence of subject matter

28  jurisdiction over a case.  A challenge to subject matter jurisdiction may be either facial or factual.

*Savage v. Glendale Union High School*, 343 F.3d 1036, 1040 n. 2 (9th Cir. 2003).  In a facial

challenge, the moving party contends that, even accepting all of the allegations in the plaintiff's

complaint as true, the plaintiff has failed to establish that the court has jurisdiction over the claims.

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a factual challenge,

however, the moving party may submit affidavits or other evidence disputing the allegations in the

complaint that purportedly provide the basis for jurisdiction.  *Id.*  The nonmoving party must then

present evidence sufficient to meet its burden of establishing subject matter jurisdiction.  *Id.*  A

court may consider evidence outside the complaint without converting a Rule 12(b)(1) motion into

a motion for summary judgment.  *Id.*  However, just as in a motion for summary judgment, all

disputes of fact will be resolved in favor of the non-movant.  *Dreier v. United States*, 106 F.3d

844, 847 (9th Cir. 1997).

     2.   Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

     A motion to dismiss a complaint under Rule 12(b)(6) tests the legal sufficiency of the

claims asserted in the complaint.  *Navarro v. Black*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule

8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  The function of this pleading requirement is

to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "While a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be

enough to raise a right to relief above the speculative level."  *Id.* at 555 (internal citations and

parentheticals omitted).  In considering a 12(b)(6) motion, "[a]ll allegations of material fact are

taken as true and construed in the light most favorable to plaintiff.  However, conclusory

allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for

failure to state a claim."  *Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996); *see*

*also Twombly*, 550 U.S. at 555.

     If the court dismisses the complaint, it should grant leave to amend even if no request to

United States District Court
Northern District of California

1    amend is made "unless it determines that the pleading could not possibly be cured by the

2    allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook,*

3    *Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

4    **D.      Application to the Case at Bar**

5             1.    <u>First Cause of Action: RCRA Imminent and Substantial Endangerment in Violation of
                    42 U.S.C. § 6972(a)(1)(b)</u>

6

7             In its first cause of action, RW alleges that Fluor's past activities as owner and operator of

8    the Site introduced toxic and hazardous chemicals into the environment.  FAC ¶¶ 24, 26-27, 29,

9    33, 35, and 37.  RW alleges that these chemicals are still present in the soil and groundwater

10   throughout the Site and that the presence of these toxins constitutes an imminent and substantial

11   endangerment to public health and the environment in violation of the RCRA.  *Id.*

12            In order for RW to succeed with an RCRA imminent and substantial endangerment claim

13   under § 6972(a)(1)(B), it must show that there is an "imminent and substantial endangerment to

14   health or the environment."  42 U.S.C. § 6972.  To show an "imminent and substantial" threat,

15   RW must do more than establish the presence of solid or hazardous wastes at a site.  *City of*

16   *Fresno v. United States*, 709 F. Supp. 2d 934, 943 (E.D. Cal. 2010) (citing *Foster v. United States*,

17   922 F. Supp. 642, 661 (D.D.C. 1996)).  Instead, "endangerment must [be shown to] be substantial

18   or serious, and there must be some necessity for the action."  *Price v. U.S. Navy*, 39 F.3d 1011,

19   1019 (9th Cir. 1994).  The fact that remedial activity… has commenced at a site greatly reduces

20   the likelihood that a threat to health or the environment is imminent.  *City of Fresno*, 709 F. Supp.

21   2d at 943.

22            Fluor argues that RW's first claim fails because it has not stated a plausible RCRA

23   imminent and substantial endangerment claim for the Pond and Tower Sites, since RW has not

24   alleged any deficiencies in the ongoing remediation and investigation being supervised by the

25   DTSC and RWQCB.  MTD at 9 (citing *Price*, 39 F.3d at 1019 and *W. Coast Home Builders, Inc.*

26   *v. Aventis Cropscience USA Inc.*, 2009 WL 2612380, at *4 (N.D. Cal. Aug. 21, 2009)).  Fluor

27   relies on to two recent letters from the DTSC's public file stating that "groundwater remediation is

28   not necessary" at the Pond Site, and that the DTSC is reviewing a soil remediation plan that would

1   remove all of the contaminated earth from the site.  RJN, Exs. C, D.  Flour also references two

2   letters from the RWQCB's public file which establish that "the RWQCB is supervising an

3   approved plan for the remediation of groundwater at the Tower Site by Ecodyne."  *Id.*, Exs. G, H.

4          RW argues that "[t]here is no precedent that agency oversight, in and of itself, obviates a

5   finding of imminent and substantial and endangerment as a matter of law."  Opp'n at 13.  RW

6   contends that Fluor is still in violation of the RCRA because the waste and contaminated soil are

7   still on site and have not been cleaned up.  *Id.* (citing  *Prisco v. State of N.Y.*, 902 F. Supp. 374,

8   395 (S.D.N.Y. 1995), disagreed with on other grounds, *B.F. Goodrich v. Betkoski*, 99 F.3d 505 (2d

9   Cir. 1996), cert. denied sub nom).

10         RW's argument misses the point raised by Fluor: RW has failed to allege that the DTSC's

11  and the RWQCB's investigation and remediation programs are inadequate and will not address the

12  contamination that exists at the Pond and Tower Sites such that imminent and substantial

13  endangerment now exists.  At this stage, RW must set forth factual allegations stating a plausible

14  claim, which it has not done.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S.

15  at 555.  While RW has alleged that there is an imminent and substantial endangerment to public

16  health and the environment stemming from pollutants discharged from the Pond and Tower Sites,

17  it has failed to allege that the ongoing DTSC and RWQCB remediation plans are insufficient to

18  address the endangerment, such that an imminent threat exists.  *See W. Coast Home Builders, Inc.*,

19  2009 WL 2612380, at * 4 (RCRA claim rejected where contamination was already being

20  addressed by the DTSC through a consent order and Remedial Action Plan).  As in *W. Coast*

21  *Home Builders, Inc.,* this underscores the fundamental problem with RW's RCRA claim as to the

22  Pond and Tower Sites: (1) the RAP and Consent Order which require Fluor to clean up the

23  groundwater contamination is already underway; and (2) RW "has identified nothing whatsoever

24  that this Court could order [Fluor] to do to supplement [already existing remediation] efforts" at

25  those sites.  *Id.* at *4 (citing *87th St. Owners Corp. v. Carnegie–Hill–87th St. Corp.*, 251 F. Supp.

26  2d 1215, 1220–21 (S.D.N.Y. 2002) (dismissing RCRA claim as moot due to ongoing state-

27  supervised cleanup addressing contamination).  Instead, RW merely alleges the presence of high

28  levels of pollutants, without alleging that the contamination will not be addressed via

United States District Court
Northern District of California

14

1    implementation of the DTSC Consent Order or the Regional Board's RAP at those two sites.  *See*

2    FAC ¶¶ 24, 26, 27, 29, 33, 35, and 37.

3        Accordingly, RW has not sufficiently asserted a plausible claim that the Tower Site and

4    Pond Site present an imminent and substantial endangerment to health or the environment, as

5    required under 42 U.S.C. § 6972(a)(1)(B).  The Motion to Dismiss the first cause of action with

6    respect to these sites is therefore GRANTED with leave to amend.

7        2.    Second Cause of Action - Open Dumping in Violation of RCRA, 42 U.S.C. § 6945,
             Creating Imminent and Substantial Endangerment to Health or to the Environment

8

9        In its second claim for relief, RW alleges that Fluor is in violation of 42 U.S.C. § 6945, the

10   provision of the RCRA which prohibits open dumping.  FAC ¶¶ 40-41.  Specifically, RW alleges

11   that contaminants introduced by Fluor remain on the Site and are allegedly being discharged into

12   ground and surface water.  *Id*. ¶ 42.

13       The RCRA prohibits "any solid waste management practice or disposal of solid waste or

14   hazardous waste which constitutes the open dumping of solid waste or hazardous waste" and

15   authorizes citizen suits "against persons *engaged* in the act of open dumping." 42 U.S.C. § 6945(a)

16   (emphasis added).  Liability under § 6945(a) requires that the defendant have been engaged in the

17   act of open dumping at the time the complaint was filed.  *S. Rd. Assoc's v. IBM Corp.*, 216 F.3d

18   251, 257 (2d Cir. 2000) (holding that a plaintiff must plead that the defendant "is introducing

19   substances" at the time the complaint is filed to state an open dumping claim); *see also Gwaltney*

20   *of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 57 (1987) (concluding, based on the

21   present-tense language of RCRA § 6972, that Congress authorized open dumping claims under the

22   RCRA for ongoing or intermittent violations, but not past violations).

23       Fluor argues that RW does not allege that it is currently engaged in open dumping, or

24   introducing wastes or substances into the environment since Fluor ceased ownership and operation

25   of the Site in 1972.  MTD at 10 (citing FAC ¶ 23).  Thus, Fluor argues, RW's theory of liability is

26   based on the effects of Fluor's past discharge or disposal of wastes on the Site in 1972, not any

27   current discharge.  *See* FAC ¶ 24 ("for more than thirty (30) years, pollutants at the Site have been

28   migrating…"); ¶ 27 (Fluor, "in the course of doing business on the Site, has discharged and

United States District Court
Northern District of California

15

1    continues to discharge, *by virtue of ongoing discharges from previously discharged wasted waste*

2    *deposits, pollutants…*") (emphasis added); ¶ 40 (Fluor "*used* chemicals … in such a manner that

3    said chemicals *illegally discharged* to permeable surfaces and surface drainage at the Site, thereby

4    discharging pollutants … and allowing these pollutants to discharge") (emphasis added).

5         A "historical act cannot support a claim for violation of 42 U.S.C. § 6945(a)" that is based

6    on the "introduction" of a contaminant. *Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 711

7    (W.D.N.Y. 2011) (citing *South Rd. Assocs.*, 216 F.3d at 257); *see also Gwaltney*, 484 U.S. at 59

8    (citizens may seek civil penalties only in a suit brought to enjoin or otherwise abate an ongoing

9    violation: "the harm sought to be addressed by the citizen suit lies in the present or the future, not

10   in the past."). "What is prohibited by the statute and the [associated] regulation [40 C.F.R. §

11   257.3–4[5]] (read together) is the act of introducing a substance that causes ... exceedances...." *Id.*

12   (internal citations and quotations omitted). Thus, although RW has alleged that Fluor's prior

13   activities have caused pollution on the Site, RW cannot allege that Fluor is *currently* "engaged in

14   the act of open dumping" or "introducing substances" into the environment.[6] *S. Rd. Assoc's*, 216

15   F.3d at 257. Nor can RW allege that there a reasonable likelihood that Fluor will continue to

16   pollute on the sites in question, given its transfer of ownership many years prior. *N. Cal River*

17   *Watch v. Exxon Mobil Corp.* ("*Exxon*"), 2010 WL 3184324, at *5 (N.D. Cal. Aug. 11, 2010).

18        To sustain an action for open dumping, RW must allege that Fluor is currently introducing

19   substances that would cause exceedances. *See Mervis Indus., Inc. v. PPG Indus., Inc.*, 2010 WL

---

[5] These sections list the criteria for determining what is considered an open dump. Failure to satisfy any one criterion renders a facility an open dump, and thus violates the RCRA. *S. Rd. Assoc's*, 216 F.3d at 256. Facilities that satisfy all of the criteria are considered sanitary landfills. *See* 42 U.S.C. § 6945(a).

[6] RW argues that a defendant need not be currently engaged in dumping or introducing wastes into the environment to be in violation of § 6945(a). Opp'n to MTD at 23 (citing *N.Cal. River Watch v. Honeywell Aerospace*, 830 F. Supp. 2d 760, 770 (N.D. Cal. 2011). However, *Honeywell* is distinguishable because there the plaintiff alleged that the current owner and operator of the site continuously engaged in open dumping. *Id.* RW also argues that "courts have recognized the continued presence of illegally dumped materials, whether or not recent discharges have taken place, constitutes a continuing violation of the RCRA's prohibition on open dumping." Opp'n to MTD at 11. Three of the cases RW cites rely on 40 C.F.R. § 280.10 et seq., which creates continuing liability for former owners of underground petroleum storage tanks to remedy known leaks, which is not at issue here. The remaining case, *Acme Printing Ink Co. v. Menard, Inc.*, 891 F. Supp. 1289, 1302 (E.D. Wis. 1995) is also inapposite as it held that the defendant was not in violation of Wisconsin's hazardous waste facilities regulations, and thus not subject to the RCRA.

United States District Court
Northern District of California

1381671, at *3 (S.D. Ind. March 30, 2010) ("fact that pollutants remain on the [property] unremediated [and continue to leach, migrate and be drawn into the soil, groundwater and creek] is not sufficient to allege an ongoing violation of the open dumping prohibition"); *see also June v. Town of Westfield*, 370 F.3d 255, 259 (2d. Cir. 2004) (holding that allegation that fill material remained in shore embankment was insufficient to state a claim for open dumping since complaint did not allege that defendant continued to introduce substances that made the exceedances worse). The fact that unremediated pollutants remain on the Site is not sufficient to allege an ongoing violation of the open dumping prohibition.

For these reasons, the Court GRANTS Fluor's Motion to dismiss RW's second claim WITHOUT LEAVE TO AMEND.

3.   Third Cause of Action - Discharge of Pollutants from a Point Source Must be Regulated by a NPDES Permit under 33 U.S.C §1342(a) and (b), 33 U.S.C. § 1311

In  its third claim for relief, RW alleges that Fluor has violated and continues to violate the CWA by way of its alleged discharging of pollutants from point sources into United States waters without an NPDES permit, violating CWA § 301, 33 U.S.C. § 1311[7].  FAC ¶¶ 44, 45.  RW alleges that these point sources currently discharging include the former locations of the evaporations ponds on the Site, roads, sewer lines, drainage ditches, equipment, vessels, as well as above and below grade storage tanks.  *Id*.

Fluor argues that RW's third claim should be dismissed on two grounds: (1) the Court lacks jurisdiction because the CWA does not create liability for wholly past violations; and (2) even if the Court did have jurisdiction over the CWA claim, RW fails to state a claim because the CWA does not allow liability for discharges prior to the implementation of the NPDES permitting program.  MTD at 12-13.

_____

[7] Effluent limitations on pollutants, and violations of those limitations are regulated under 33 U.S.C § 1311(a), which states that, " [e]xcept as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful."  33 U.S.C. § 1311.  Section 1342(a) regulates permits and compliance with the NPDES, delegating authority to issue permits to the states.

United States District Court
Northern District of California

*a. Liability for Wholly Past Violations by Prior Owner or Operator*

The CWA authorizes citizen's suits against "any person … who is alleged to be in violation of … an effluent standard or limitation under [the CWA.]"  33 U.S.C. § 1365(a)(1); *see also Gwaltney*, 484 U.S. at 58-61.  In *Gwaltney*, the Supreme Court held that citizens bringing suit for Clean Water Act violations "may seek civil penalties only in a suit brought to enjoin or otherwise abate an ongoing violation."  *Id*. at 59.  A plaintiff may show an ongoing violation either: "(1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations."  *Inland Empire Waterkeeper v. Uniweb, Inc*., 2008 WL 6098645, at *10 (C.D. Cal. Aug. 6, 2008) (internal citations and quotations omitted).

Fluor first argues that the Court lacks jurisdiction because the FAC alleges only past violations against a past owner or operator.  MTD at 12.  The two circuits to address this issue have both held that the effects of past discharges are insufficient to confer jurisdiction under the CWA because they do not satisfy *Gwaltney's* current violation requirement.  In *Hamker v. Diamond Shamrock Chem. Co*., the Fifth Circuit found that allegations of a single past discharge of oil with continuing effects on ground water did not satisfy *Gwaltney's* present violation requirement.  756 F.2d 392, 397 (5th Cir. 1985).  The *Hamker* court explained that "[m]ere continuing residual effects resulting from a discharge are not equivalent to a continuing discharge."  *Id*.  The Second Circuit came to a similar conclusion in *Conn. Coastal Fishermen's Ass'n v. Remington Arms Co*., 989 F.2d 1305, 1313 (2d Cir. 1993), holding that the decomposition of previously discharged lead shotgun pellets in the Long Island Sound could not satisfy *Gwaltney's* present violation requirement.

RW argues that *Hamker* and *Conn. Coastal Fishermen's Ass'n* are distinguishable because the pollution from the Waste Pond area is still "discharging," rather than "migrating" away from the original discharge.  Opp'n to MTD at 10 (citing MTD at 19).  However, RW's argument fails address the fact that both *Hamker* and *Conn. Coastal Fishermen's Ass'n* considered and rejected this theory of liability.  *See Hamker*, 756 F.2d 397 (*Gwaltney's* present violation requirement is incompatible with liability for the continuing effects of wholly past conduct, such as the migration

18

1   of previously discharged pollutants); *Conn. Coastal Fishermen's Ass'n*, 989 F.2d at 1313.

2        RW also contends that *Sierra Club v. El Paso Mines, Inc.*, 421 F.3d 1133 (10th Cir. 2005)

3   establishes CWA liability for passive migration of historic wastes through a point source.

4   However, *El Paso* is distinguishable because the Tenth Circuit considered only "whether Congress

5   intended *successor owners* of a point source to be subject to Section 402's NPDES permitting

6   requirements." *Id*. at 1142 (emphasis added).  The *El Paso* court did not address the potential

7   liability of *past* owners or operators.  The court held that a *present* owner can be liable under the

8   CWA for a present point source discharge resulting from historic activities by others no longer

9   involved in site ownership or operation.  *Id*. at 1141 (emphasis added).  Here, Fluor is a past

10   owner, and the discharge occurred almost four decades before RW filed this suit.  Accordingly, *El*

11   *Paso* does not confer jurisdiction under the CWA.  The Court thus agrees with Fluor that RW has

12   failed to allege a claim under the CWA based on wholly past activity.

13             *b. Liability Under the CWA for Unpermitted Historical Discharge of Pollutants*
14              *Prior to Implementation of the NPDES Permit Program*

15        Fluor further argues that it cannot be liable for discharges that occurred prior to the

16   implementation of the NPDES permit program.  MTD at 13.  Congress enacted the CWA

17   amendments and created the NDPES permitting program in 1972, and EPA implemented the

18   NPDES permit provisions beginning on May 22, 1973.  *See* Federal Water Pollution Control Act

19   Amendments of 1972, Pub. L. No. 92-500 § 402, 86 Stat. 880 (1972) (authorizing EPA to

20   implement the NPDES program) (codified in 33 U.S.C. § 1342 (amended Oct. 18, 1972)); 38 Fed.

21   Reg. 13528-40 (May 22, 1973) (codified in 40 C.F.R. § 125.1 et seq.).

22        In the FAC, RW alleges that Fluor ceased ownership and operation of the Site by 1972,

23   FAC ¶ 22, one year before the earliest implementation of any NPDES permitting requirements.

24   Both the Ninth Circuit and courts in this District have held that under *Gwaltney*, a former owner or

25   operator cannot be "in violation of" a permit requirement under the RCRA where the alleged

26   activity occurred before the enactment of the provision.  *Ascon Props v. Mobil Oil Co.*, 866 F.2d

27   1149, 1159 (9th Cir. 1989) (property owner did not state claim under RCRA against alleged

28   generators and transporters of hazardous waste where activity occurred before RCRA enacted);

1   *see also Exxon*, 2010 WL 3184324, at *3-4 (N.D. Cal. Aug. 11, 2010) (former owner of operator

2   of several gas stations could not be "in violation of" any permit, standard, etc. under RCRA

3   because it had ceased ownership ten years before the suit was filed).  The Eleventh Circuit has

4   reached the same conclusion with regard to the CWA.  *Hughey v. JMS Development Corp.*, 78

5   F.3d 1523, 1530 (11th Cir. 1996) (rejecting the plaintiff's contention that the defendant should

6   have obtained an NPDES permit for storm water runoff at a time when the permit program was

7   not yet fully implemented).

8        Relying on *Ascon* and *Exxon,* Fluor argues that it cannot be liable under the CWA for

9   discharges that occurred prior to the implementation of the NPDES permitting program.  MTD at

10   12-13.  RW counters that its CWA claim is not based on wholly past violations and that it does not

11   claim that Fluor was required to have a permit before the NPDES permit system was in place.

12   Opp'n to MTD at 8.  Instead, RW alleges that Fluor is currently violating the CWA because it is

13   responsible for the ongoing discharge of pollutants from the Pond Site, as well as other locations

14   within the Site.  *Id.* at 8.  RW alleges that it is these ongoing discharges into United States waters

15   that place Fluor in violation of the NPDES permit program.  *Id*.

16        The Court finds the reasoning in *Ascon* and *Exxon* persuasive.  Like the defendants in these

17   cases, Fluor has not owned or operated the Site in over forty years, since before the NPDES permit

18   program was adopted, and thus could not be in violation of the NPDES permit program when the

19   discharge occurred in 1972.  Accordingly, the Court dismisses RW's CWA claim, because RW

20   cannot satisfy the current violation requirement based on either of the grounds alleged in the FAC.

21   Because amendment would not cure the defect in this claim, the Court GRANTS Fluor's motion

22   to dismiss RW's third claim for violation of the CWA WITHOUT LEAVE TO AMEND.

23        4.   Fluor's Request to Dismiss RCRA Claims Outside of the Pond and Tower Site for
           Lack of Jurisdiction, Alleging that RW Provided no Notice of Those Claims in Their
24           CWA and RCRA Notice Letters

25        Last, Fluor argues this Court lacks jurisdiction over RW's RCRA claims for imminent and

26   substantial endangerment, and CWA and RCRA claims for open dumping outside of the Pond Site

27   because RW did not include these claims in their RCRA and CWA notice letters.  *Id*. at 3. Fluor

28   contends that the RCRA and CWA notices were insufficient and only alleged Flour's

1   responsibility for activities within the Pond Site, and that RW did not allege Fluor's responsibility

2   for activities outside of the Pond Site until their FAC.  *Id.*

3          As discussed above, RW's FAC alleges that Fluor operated a paint shop outside of the

4   Pond Site from 1962 to 1970, and that the operation of the paint shop introduced toxins such as

5   lead, cadmium, mercury, tin, copper, arsenic, asbestos, DDT, and PCBs into the environment.

6   FAC ¶ 25.  RW alleges residual hazardous materials from the paint shop and teepee burners

7   remain in the soil and groundwater, and have yet to be remediated.  *Id.* ¶ 26.

8          Under 42 U.S.C. § 6972(b), citizen suits for RCRA violations cannot be filed prior to 60

9   days after the plaintiff has provided notice to potential defendants of the violation.  Notice must

10  include:

> sufficient information to permit the recipient to identify the specific
> permit, standard, regulation, condition, requirement, or order which
> has allegedly been violated, the activity alleged to constitute a
> violation, the person or persons responsible for the alleged violation,
> the date or dates of the violation, and the full name, address, and
> telephone number of the person giving notice.

14  40 C.F.R. § 254.3(a).

15         The CWA contains a substantially similar 60-day notice provision, requiring that:

> [n]otice regarding an alleged violation of an effluent standard or
> limitation or of an order with respect thereto, shall include sufficient
> information to permit the recipient to identify the specific standard,
> limitation, or order alleged to have been violated, the activity
> alleged to constitute a violation, the person or persons responsible
> for the alleged violation, the location of the alleged violation, the
> date or dates of such violation, and the full name, address, and
> telephone number of the person giving notice.

21  40 C.F.R. § 135.3(a).

22         Fluor argues that RW's RCRA and CWA claims for alleged activities outside the Pond

23  Site should be dismissed because RW allegedly did not give Fluor notice of those claims, and

24  therefore this Court lacks subject matter jurisdiction.  MTD at 11.  Fluor alleges it was given no

25  notice about violations outside of the Pond Site until it received RW's FAC.  *Id.*  Fluor relies on

26  *Wash. Trout v. McCain Foods, Inc.*, 45 F.3d 1351 (9th Cir. 1995), to support the claim that

27  information in the RCRA and CWA notices was not specific enough to inform Fluor of its alleged

28  violations.  MTD at 12.  In *Wash. Trout*, the court held that the CWA notice requirements are to be

United States District Court
Northern District of California

21

strictly construed in order to give defendants notice as to other unnamed plaintiffs at the time the notice was served.[8] 45 F.3d at 1354.  Fluor argues that RW's lack of specificity in their Notice Letters and the strict construction language in *Wash. Trout* prevent this Court from having jurisdiction.  MTD at 14.

RW contends that the notices are statutorily sufficient to have placed Fluor on notice of the claims set forth in its FAC.  Opp'n to MTD at 15, 19-20.  RW relies on *Proffitt v. Comm'rs, Twn'p of Bristol*, 754 F.2d 504 (3rd Cir. 1985) to support its position that there is some flexibility in the notice requirements, contrary to Fluor's interpretation of *Wash. Trout*.  *Id.*  The *Proffitt* court found that the notice requirement "is a jurisdictional prerequisite to bringing suit against private defendants under the citizen suit provisions" of the RCRA or the CWA, and the notice requirement should be applied flexibly "to avoid hindrance of citizen suits through excessive formalism."  *Proffitt*, 754 F.2d at 506.  RW relies on *Proffitt* to support its position that notice requirements are not to be construed as excessively rigid or formal.  Opp'n to MTD at 15.  RW also cites *Chesapeake Bay Fdn., Inc. v. Bethlehem Steel Corp.*, in which the court held that a notice requirement "is not meant to provide defendants with a formalistic defense to a claim of continuing violation."  608 F. Supp. 440, 450-51 (D.C. Md. 1985).

RW further argues that its RCRA notice provides Fluor with all of the necessary information required by 40 C.F.R. § 254.3(a).  Opp'n to MTD at 10-13.  RW cites to its RCRA notice, where it requests, "A comprehensive investigation of the entire site especially those areas outside the 'Waste Pond' and 'Tower' sites."  RW's RCRA Notice Ltr. at 15, Ex. 1, Dkt. No. 106.  RW named Fluor and Ecodyne as defendants on the first page of the letter, and collectively labeled them as "Polluters."  *Id.* at 1.  RW further argues that no court has ever required that, once a plaintiff has identified a site, it must identify every possible location containing pollutants.  Opp'n to MTD at 15-16, 27.

Likewise, RW argues that its CWA notice provides Fluor with all of the necessary information required by 40 C.F.R § 135.3(a).  Opp'n to MTD at 18.  Particularly, the CWA Notice

---

[8] The CWA notice requirements in 40 CFR § 135.3 are the same as the notice requirements of 40 CFR § 254.3.

United States District Court
Northern District of California

1    identifies the entire Site, and gives a brief history and details as to the various activities within the

2    Site giving rise to the current alleged ongoing discharges, including discharges going into the

3    canal and discharges to Pruitt Creek downstream from (and outside of) the Waste Pond area.  Id. at

4    20 (citing RW's CWA Notice Ltr. at 34, 41).  The CWA notice identifies Fluor as the current

5    discharger.  *Id.*

6          The Court has considered the parties' arguments and agrees with RW that the notice

7    requirements under 40 C.F.R. § 254.3(a) are met.  While Fluor cites to *Wash. Trout* as supporting

8    its position that notice requirements are to be strictly construed, the facts in that case are

9    distinguishable.  In *Wash. Trout*, the court found that the purpose of strictly construing the notices

10   was to provide a period for nonadversarial negotiation, which would be circumvented by failing to

11   identify all of the parties involved.  *Wash. Trout*, 45 F.3d at1354.  Here, RW provided Fluor with

12   notice of the other defendants and parties involved.  Further, in *Chesapeake Bay Fdn.*, the court

13   noted that a notice requirement "is not meant to provide defendants with a formalistic defense to a

14   claim of continuing violation."  608 F. Supp. at 450-51.

15         The Court does not find *Wash. Trout* to be applicable here, because Fluor was well aware

16   of the relevant parties involved, the activities that took place on the Site, and the person or persons

17   allegedly responsible.  RW named Fluor and Ecodyne as parties, and RW specifically referenced

18   areas both inside and outside of the Pond and Tower Sites in its Notice.  Fluor and Ecodyne likely

19   know which party conducted which activities alleged to have occurred on the Site, and they cannot

20   prevail in their attempt to avoid responsibility based on a lack of hyper specificity in the RCRA

21   Notice Letter provided by RW.  For these reasons, the Court DENIES Fluor's Motion to Dismiss

22   RW's RCRA cause of action for violations outside of the Pond and Tower Sites.  As the Court has

23   dismissed RW's CWA claims with prejudice, it DENIES the Motion to Dismiss the CWA claims

24   outside the Pond and Tower Sites as moot.

25                                    **MOTION TO INTERVENE**

26   **A.    Standard for Intervention Under Federal Rule of Civil Procedure 24(a)**

27         Rule 24(a) provides that "[u]pon timely application anyone shall be permitted to intervene

28   in an action: ... (2) when the applicant claims an interest relating to the property or transaction

United States District Court
Northern District of California

which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

The requirements of Rule 24(a)(2) may be broken down into four elements: (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (citing *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011)). The party seeking to intervene bears the burden of showing that all of the requirements for intervention have been met. *United States v. Alisal Water Corp*., 370 F.3d 915, 919 (9th Cir. 2004).

In general, the Court must construe Rule 24(a) liberally in favor of potential intervenors. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 896-97 (9th. Cir. 2011). However, "[f]ailure to satisfy any one of the requirements is fatal to the application," and a court need not reach the remaining elements if one of the elements is not satisfied. *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). In ruling on a motion to intervene, the court must accept as true the nonconclusory allegations of the motion and proposed answer. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).

**B.      Application to the Case at Bar**

1.   Timeliness

Timeliness is a "threshold requirement for intervention as a right." *Morazan v. Aramark Uniform & Career Apparel Group, Inc*., 2013 WL 4734061, at *3 (N.D. Cal., Sep. 3, 2013) (quoting *League of United Latin Am. Citizens*, 131 F.3d at 1302 (citations omitted). In determining whether a motion to intervene is timely, courts weigh three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Alisal*, 370 F.3d at 921. "Timeliness is a flexible concept;

its determination is left to the district court's discretion." *Id.* at 921 (citing *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156 (9th Cir. 1981)).  The Court must be lenient in applying the timeliness requirement where intervention is sought as a matter "of right."  *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).  Although delay can strongly weigh against intervention, the mere lapse of time, without more, is not necessarily a bar to intervention.  *Oregon*, 745 F.2d at 552.

### a.  Stage of the Proceedings

With regard to the stage of the proceedings, the Court finds the Motion to be timely.  Here, the only motion that has been filed is Fluor's Motion to Dismiss the FAC.  Discovery has yet to commence, and the Court has not significantly engaged the issues.  Accordingly, this is not a situation in which the proceedings in the case have advanced to the point where intervention in inappropriate.  *See S. Yuba River Citizens League and Friends of the River v. Nat'l Marine Fisheries Svc.*, 2007 WL 3034887, at *12 (E.D. Cal. Oct. 16, 2007) (allowing intervention where, as here, the only substantive motion filed was motion to dismiss, no discovery had been conducted, and party moved for intervention before dispositive motion filing deadline).

### b.  Prejudice to the Parties

The Court also finds that intervention would not result in prejudice to Fluor or other parties.  In assessing prejudice to the parties, the court considers "whether existing parties may be prejudiced by the delay in moving to intervene ... 'not whether the intervention itself will cause the nature, duration or disposition of the lawsuit to change' (otherwise, intervention would never be allowed because it inevitably prolongs the litigation)."  *Defenders of Wildlife v. Johanns,* 2005 WL 3260986, at *4 (N.D. Cal. Dec. 1, 2005) (citation omitted).  "The court looks to factors such as loss of evidence, settlements made in expectation of no further claims, and the need to reopen matters previously resolved."  *Id.*

Fluor maintains that TSG's failure to intervene prior to the hearing on the Motion to Dismiss the FAC, or to stipulate to postponing that motion until after the Court ruled on the Motion to Intervene, will prejudice Fluor by requiring it to present and re-argue its Motion to Dismiss the RCRA and CWA claims.  Opp'n to MTI at 5.  However, the Court has not dismissed the RCRA claim with respect to the entire Site, and has given RW leave to amend its claim with

United States District Court
Northern District of California

1    respect to the Pond and Tower Sites.  Accordingly, TSG's intervention will not cause Fluor

2    prejudice by requiring it to re-litigate the RCRA claims.  Moreover, the Court's ruling on the

3    Motion to Dismiss is dispositive on the issue of whether RW may allege a violation of the CWA

4    against Fluor.

5                    c.   *Reason and Length of Delay*

6           Last, the Court finds that TSG's reason and length of the delay in moving for intervention

7    to be reasonable.  The party seeking intervention must provide a reason for its delay in seeking to

8    enter into the case.  *Alisal*, 370 F.3d at 923.  The key date for assessing the timeliness of a motion

9    to intervene is the date that the applicant should have been aware that its interests would no longer

10   be adequately represented by one of the existing parties.  *Smith v. Marsh*, 194 F.3d 1045, 1052

11   (9th Cir. 1999).  Fluor asserts TSG should be barred from intervening because TSG knew of its

12   cost recovery and damage claims against Fluor and Ecodyne in late 2011, but purposefully waited

13   nearly two years to assert those claims.  Opp'n to MTI at 5.  However, TSG could not have

14   intervened in this action for the purpose of asserting claims against Fluor prior to January 15,

15   2013, because that is when Fluor was added as a party defendant.  Dkt. No. 73.  Given that this

16   lawsuit is still in a relative early stage, TSG's further delay in moving to intervene was reasonable

17   and consistent with its efforts to settle with Flour without resorting to litigation.

18          For these reasons, the Court finds that the Motion to Intervene was timely.

19          2.   Significant Protectable Interest

20          A potential intervener must show that it has a "protectable interest," warranting

21   intervention.  *Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981).  An applicant has such an

22   interest in an action if: (1) it asserts an interest that is protected under some law, and (2) there is a

23   'relationship' between its legally protected interest and the plaintiff's claims.*"  California ex rel.*

24   *Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. Cal. 2006).  When a complaint involves

25   environmental issues, a party seeking to intervene must have an interest relating to the underlying

26   subject matter.  *Alisal*, 370 F.3d at 920.  However, the interest does not need to be protected by the

27   same statute under which litigation is brought.  *Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478, 1484

28   (9th Cir. 1993).  Property rights are such "protectable interests" as will support motion for

26

1   intervention as of right.  *Id*. at 1482-83.

2       TSG argues that ownership of some of the real property affected by the contamination at

3   issue, including the cleanup hot spot, provides the requisite interest for intervention as of right.

4   MTI at 4.  Fluor does not address this factor in its Opposition.  The Court finds that TSG has

5   established a significantly protectable interest under Rule 24(a) as owner of the property which is

6   affected by the pollution, and that TSG has established it has an interest in the cleanup of pollution

7   from its land.

8       3.  <u>Practical Impairment of TSG's Interests</u>

9       "The rule on intervention as of right requires that the applicant claim an interest the protection

10  of which may as a practical matter be impaired or impeded if the lawsuit proceeds without him [or

11  her]."  *Sierra Club*, 995 F.2d at 1481.  When considering possible impairments to an intervenor's

12  interests in an action, "courts are guided primarily by practical and equitable considerations."  *Alisal*,

13  370 F.3d at 919.  Consistent with the liberal standard in favor of intervention, a proposed

14  intervenor need not show that impairment is an "an absolute certainty."  *Citizens for Balanced Use*

15  *v. Montana Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011).  Rather, the intervenor's interests

16  need only be "'substantially affected in a practical sense by the determination made in an action.'"

17  *Berg*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 Advisory Committee Notes).  Generally, after

18  determining that the applicant has a protectable interest, courts have "little difficulty concluding"

19  that the disposition of the case may affect such interest.  *Lockyer v. United States*, 450 F.3d 436,

20  442 (9th Cir. 2006).

21      As discussed above, TSG has shown that it has a significant protectable interest.

22  Accordingly, the Court must determine whether its interest would, as a practical matter, be

23  impaired or impeded by the disposition of this suit.  *See Berg*, 268 F.3d at 821.

24      Fluor argues that TSG cannot establish that its interests would be impaired by its exclusion

25  from this action because: (1) TSG would not be precluded from bringing its claims in another

26  action; (2) there is no risk of a stare decisis effect from a decision of law; (3) TSG does not seek a

27  divergent remedial scheme at the Site; and (4) TSG's fear that it would not be able to collect a

28  judgment against Fluor in a separate action is not plausible.  Opp'n to MTI at 6-10.

United States District Court
Northern District of California

27

United States District Court
Northern District of California

1    With respect to Fluor's collateral estoppel argument, the Court agrees that TSG would not

2  be collaterally estopped from bringing a separate state action for CERCLA cleanup cost recovery

3  and property damage.  Opp'n to MTI at 7.  TSG is not a party to this litigation, and none of the

4  exceptions to the rule against nonparty preclusion apply.[9]  *See Taylor v. Sturgell*, 533 U.S. 880,

5  892-93 (2008).

6    TSG argues that even if collateral estoppel would not apply, its interests may still generally

7  be impaired by a decision in this case on one or more common issues, including: "the identity of

8  the party or parties responsible for the contamination, the movement of that contamination over

9  time, the present location of the contamination, the composition of the contamination, the

10  appropriate method for remediating the contamination, and the application of the federal statutes

11  to those facts."  Reply to MTI at 7.  Fluor counters that there is no risk to TSG of an adverse stare

12  decisis effect from a decision of law on these grounds since the elements of RW's RCRA and

13  CWA claims differ from the CERCLA and state law claims TSG seeks to assert.[10]  Opp'n to MTI

14  at 9.  The Court agrees that there is little risk in this case that an appellate ruling of law would

15  have any adverse stare decisis effect on TSG's interest in cost recovery or property damages.

16  Generally, courts have found a potential impairment where a decision on appeal could create

17  binding law that would limit the intervenor's ability to fully litigate its case in a future proceeding.

18  *See, e.g., Sierra Club*, 995 F.2d at 1484, 1486 (holding that a decision on EPA's authority to issue

19  NPDES permits might create precedent that would limit the City of Phoenix's future ability to sue

20  EPA over Phoenix's own NPDES permits).  The prospect of stare decisis thus may, under certain

21  circumstances, supply the requisite practical impairment warranting intervention as of right.

22  *Pangilinan*, 651 F.2d at 1325.  For instance, stare decisis may satisfy the impairment requirement

23

24    [9] *Taylor* identifies six exceptions to the rule against nonparty preclusion: (1) where there is an
   agreement between a party and the nonparty; (2) where there is a preexisting substantive legal
25  relationship between the party and the nonparty; (3) where the nonparty was adequately
   represented by a party with the same interest; (4) where the nonparty had assumed control over the
26  litigation; (5) where the nonparty seeks to re-litigate as a proxy or representative for the party to
   the earlier proceeding; and (6) where a "special statutory scheme" expressly forecloses subsequent
27  litigation by nonparties.  553 U.S. at 892-93.  None of these exceptions apply to TSG.
   [10] TSG originally argued that it would be collaterally estopped from asserting its CERCLA and
28  state law cost recovery and property damage claims in another proceeding, but now concedes that
   collateral estoppel would not apply.  Reply at 6, Dkt. No. 126.

1    if the pending litigation is a case of first impression and the applicant can show that the

2    precedential effect is clear.  *Green v. United States*, 996 F.2d 973, 977 (9th Cir. 1993).  However,

3    speculative stare decisis effects, such as those raised here by TSG, are not sufficient to warrant

4    intervention.  *Id*. (precedential impact must be clear to be basis of protectable interest for

5    intervention).  TSG seeks to assert seven additional state law claims that RW has not asserted.  A

6    ruling by this Court would not have a precedential effect on any of these state law issues.  *See Raven v.*

7    *Deukmejian* (1990) 52 Cal. 3d 336, 352 ("decisions of the lower federal courts interpreting federal law,

8    though persuasive, are not binding on state courts").  Moreover, the elements of these state law and

9    CERCLA claims are different from the elements of the RCRA and CWA claims.  Nor are the cost

10   recovery and property damages available to TSG under the RCRA and CWA.  Thus, there is no

11   chance that an appellate decision on RW's RCRA and CWA claims will bind future

12   interpretations of CERCLA or the California state laws under which TSG seeks relief.

13   Accordingly, TSG has not established that there is a risk that the ruling of the federal district court

14   in this case would have any stare decisis effect on its interest in cost recovery or property

15   damages.  *See Stringfellow*, 783 F.2d at 826.

16            The Court also agrees that TSG's concerns that it would impair its ability to recover cost

17   recovery and property damages if RW prevailed is insufficient to constitute a significant

18   impairment of its interests.  "The mere fact that the first action may decrease the ability of the

19   intervenor to collect a potential judgment against the defendant is insufficient to be considered a

20   substantial impairment of an interest for the purposes of Rule 24(a)(2)."  *Jet Traders Inv. Corp. v.*

21   *Tekair, Ltd*., 89 F.R.D. 560, 570 (D. Del. 1981).

22            The Court does find, however, that TSG has established that its interest may be impaired

23   because it seeks relief that is divergent from, or incompatible with the relief sought by RW.  *See*

24   *Stringfellow*, 783 F.2d at 827 (allowing intervention where plaintiff sought to abate discharges of

25   hazardous substances from a site, while the intervenor sought complete removal of all hazardous

26   substances from the site, as well as additional health studies); *Oregon*, 839 F.2d at 638 (allowing

27   intervention because Oregon had limited resources for improving its mental health facilities, and

28   because both plaintiff and the intervenor sought to remedy different problems at those facilities).

United States District Court
Northern District of California

Fluor argues that TSG seeks identical remedies as RW, and thus would not suffer any impairment of its own interests.  Opp'n to MTI at 10.  However, though TSG admits that many of its interests in the investigation and remediation of the Site "overlap" with RW's interests (MTI at 4, 6), it ultimately seeks divergent remedies such as reimbursement and cleanup costs that are not available in RW's citizen's suit.  Moreover, TSG seeks injunctive relief different from RW's objectives.  Where RW seeks "full remediation of the Site reducing all contaminants of concern in the groundwater to below [an acceptable level] within 5 years," (FAC ¶ 52), TSG seeks injunctive relief requiring Fluor to "respond at its sole expense to other threatened releases and discharges of pollutants" it deposited on the Site.  Ex. A to MTI, Prop. Compl. in Intervention ¶ 66.  TSG also seeks full cleanup of the Site in addition to remediation.  *Id.*  "Where, as here, [TSG] has demonstrated a clear interest in the remedial scheme, and where [TSG] seeks to obtain remedies that differ from those sought by the original plaintiffs, it is reasonable to conclude that disposition of the litigation may impair [TSG's] ability to protect its interests."  *Stringfellow*, 783 F.2d at 827.  Accordingly, TSG has sufficiently established that its interests may be impaired if intervention is not permitted.

### 4.   Adequacy of Representation

In determining whether rights are being adequately represented, the Court considers three factors: (1) "whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments"; (2) "whether the present party is capable and willing to make such arguments"; and (3) "whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect."  *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).  "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises."  *Id.*; *League of United Latin Am. Citizens*, 131 F.3d at 1305.  "The burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests 'may be' inadequate."  *Arakaki*, 324 F.3d at 1086 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)).  However, where "the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate

30

1    inadequate representation." *Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006) (citing *Arakaki*,

2    324 F.3d at 1086).

3        Fluor argues that TSG cannot establish that RW will not adequately represent its interests

4    in the current action because they essentially seek the same relief.  Opp'n to MTI at 11.  "Where

5    an applicant for intervention and an existing party 'have the same ultimate objective, a

6    presumption of adequacy of representation arises.'"  *League of United Latin Am. Citizens*, 131

7    F.3d at 1305 (citations and quotations omitted).  Here, TSG "ultimately seeks, like RW, [Fluor's]

8    competent investigation and remediation of the TSG property and surrounding, affected property."

9    MTI at 4, 6 ("[RW's] ultimate objective is to have defendants assess and remediate the subject

10   property…TSG also seeks such relief…").  However, TSG's objective diverges from RW in that it

11   seeks cleanup costs and property damage that RW cannot recover on its behalf in a citizen's suit.

12   Moreover, the parties have previously stood in an adversarial relationship.[11]  *See Citizens for*

13   *Balanced Use*, 647 F.3d at 901 (prior adversarial relationship between a party and proposed

14   intervenor is a factor bearing on the issue of adequacy of representation).  Accordingly, TSG has

15   met the minimal burden to establish that RW may not adequately represent its interests if it is not

16   permitted to intervene, and TSG's Motion to Intervene is GRANTED.

17                                   **CONCLUSION**

18       Based on the analysis above, the Court hereby ORDERS as follows:

19   **Motion to Dismiss**

20        The Court GRANTS IN PART and DENIES IN PART Fluor's Motion to Dismiss as

21   follows.

22        First Cause of Action:

23       The motion to dismiss the RCRA claims within the Pond and Tower Sites is GRANTED

24   WITH LEAVE TO AMEND.  If RW chooses to amend the FAC, it must file an amended pleading

25   by July 30, 2014.  The motion to dismiss the RCRA claims at the remainder of the Site is

26   DENIED.

27

28   _____
[11] Although not raised in the Motion to Intervene, as owner of the contaminated land, TSG has an interest in minimizing its own liability, while RW's sole interest is protection of the environment.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Second Cause of Action:

2    The motion to dismiss the RCRA open dumping claim is GRANTED WITHOUT LEAVE

3    TO AMEND.

4    Third Cause of Action:

5    The motion to dismiss the CWA claim is GRANTED WITHOUT LEAVE TO AMEND.

6    **Motion to Intervene**

7    The Shiloh Group's Motion to Intervene is GRANTED.  Shiloh shall file its Complaint by

8    July 30, 2014.

9    **IT IS SO ORDERED.**

10

11   Dated: July 9, 2014

12   _____

13   MARIA-ELENA JAMES
     United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28