UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| CALIFORNIA RIVER WATCH, Plaintiffs, v. FLUOR CORPORATION, Defendant. | Case No. 10-cv-05105-WHO<br><br>**ORDER GRANTING FLUOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST THE SHILOH GROUP**<br><br>Re: Dkt. No. 232 |
|---|---|

## INTRODUCTION

Fluor Corporation seeks partial summary judgment that The Shiloh Group, the current owner of previously contaminated property that Fluor is investigating and remediating, is a person liable for cost recovery under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and the California Hazardous Substances Account Act ("HSAA") and cannot prevail on any affirmative defenses. Fluor does not seek to establish the amount of costs which it can recover from The Shiloh Group. In opposition, The Shiloh Group argues that it has no liability because it did not purchase the property until ten years after Fluor entered into a Consent Order with the California Department of Toxic Substances Control under which Fluor agreed to investigate and remediate environmental conditions on the property.

While this situation is somewhat anomalous, there is no genuine dispute that The Shiloh Group meets the elements of a liable person under CERCLA and the HSAA and that it has not established that Fluor's claim is time-barred or that it can prevail on any affirmative defenses. Fluor's motion is GRANTED. The Shiloh Group may offer its equitable arguments in the damages phase of this case.

# BACKGROUND

This litigation involves industrial and commercial property in Windsor, California that has a history of environmental contamination. Fluor owned and operated a business manufacturing and treating wood products on the property from approximately 1956 to 1969.[1] In 1989, Fluor entered into a Consent Order with the California Department of Toxic Substances Control under which Fluor agreed to investigate and remediate environmental conditions on the property. The Shiloh Group is the current owner and operator of a portion of the property. Fluor seeks to recover from The Shiloh Group a share of necessary response costs Fluor has incurred and continues to incur as a result of the contamination.

# LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Once the moving party has met its burden, the burden shifts to the non-moving party to "designate specific facts showing a genuine issue for trial." *Id*. at 324 (quotation marks omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255.

---

[1] A corporate entity related to Fluor owned and operated the property. For convenience, this Order refers to Fluor as the former owner and operator of the property.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

Fluor alleges a cause of action for cost recovery under CERCLA section 107(a).[2] Fluor answer and counterclaim ¶¶ 22-30 [Dkt. No. 202]. Section 107(a) provides, in relevant part, that

> [T]he owner and operator of a vessel or a facility . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for . . . any other necessary costs of response incurred by any other person consistent with the national contingency plan.

42 U.S.C. § 9607(a).[3] To establish a prima facie claim for recovery of response costs under section 107(a), a plaintiff must demonstrate that: (1) the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of that term; (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred; (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan;" and (4) the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a): the owner or operator of a facility, in this case.[4] *City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1002-03 (9th Cir. 2010).

---

[2] Fluor also alleges cost recovery under the HSAA, California's analogue to CERCLA. The parties agree that the HSAA mirrors CERCLA for all purposes relevant to this motion. This Order therefore refers to CERCLA, but the analysis applies equally to the HSAA cost recovery claim.

[3] CERCLA section 107(a) is 42 U.S.C. section 9607(a).

[4] The "four classes of persons subject to the liability provisions of Section 107(a)" are: (i) the owner and operator of a vessel or a facility, (ii) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (iii) any person who arranged for disposal or treatment of hazardous substances, and (iv) any person who accepted hazardous substances for transport. 42 U.S.C. § 9607(a). Fluor contends that The Shiloh Group falls within the first category: the owner or operator of a facility.

Fluor seeks partial summary judgment that The Shiloh Group is a liable person under CERCLA § 107(a)(1) as an owner of a facility from which there has been a release of hazardous substances and that The Shiloh Group cannot prevail on any affirmative defenses to liability. If Fluor's motion is granted, the amount of recoverable costs and the equitable allocation of those costs between Fluor and The Shiloh Group will be determined at trial.

**I.     THE SHILOH GROUP IS A LIABLE PERSON**

The Shiloh Group does not deny the basic elements of cost recovery liability under section 107(a): that the property is a facility under CERCLA; that a release of a hazardous substance from the facility has occurred; that the release has caused Fluor to incur response costs; and that it is the owner or operator of the property. Rather, The Shiloh Group argues that it is not a liable person under section 107(a) because Fluor's clean-up costs were incurred pursuant to a Consent Order entered into between Fluor and the California Department of Toxic Substances Control in 1989, and CERCLA section 113(f) is the exclusive remedy for persons whose cleanup costs arose in response to government-ordered remedial action. The Shiloh Group also argues that the section 107(a) claim is time-barred and that it is not the current owner of the property for purposes of CERCLA because it did not own the property when the Consent Order was issued. I address each argument in turn.

**A. Section 113(f) does not apply to this action**

CERCLA section 113(f)(1) provides that a person otherwise liable following a civil action under CERCLA sections 106 or 107(a) may seek contribution from third parties. 42 U.S.C. § 9613(f)(1). A party that has a right to seek contribution under section 113(f) cannot seek to recover the same costs in a cost recovery action under section 107. *See, e.g.*, *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 768 (6th Cir. 2014) ("if a party is able to bring a contribution action, it must do so under § 113(f), rather than § 107(a)"). The Shiloh Group argues that the Consent Order between Fluor and the Department of Toxic Substances Control was an action under section 106(a), and therefore Fluor's sole remedy against The Shiloh Group is for contribution under section 113.

Unfortunately for The Shiloh Group, Consent Orders issued by state agencies do not

4

1 constitute civil actions under sections 106 or 107 and therefore do not trigger section 113. For
2 example, in *Kotrous v. Goss-Jewett Co. of N. Cal.*, 523 F.3d 924, 927 (9th Cir. 2008), the
3 California Regional Water Quality Control Board issued a Cleanup and Abatement Order
4 requiring the plaintiff to investigate and clean soil at a site. The Ninth Circuit held that the order
5 did not constitute a civil action under sections 106 or 107 action and therefore the plaintiff could
6 not seek contribution under section 113, but was required to seek cost recovery under section 107.
7 Consistent with *Kotrous*, Fluor is entitled to seek cost recovery under section 107 because the
8 Consent Order does not constitute a civil action under CERCLA section 106.

### B. Fluor's cost recovery claim is not time-barred

The parties dispute whether the present action is a removal action, which must be brought "within three years after completion of the removal action," 42 U.S.C. § 9613(g)(2)(A), or a remedial action, which must be brought "within 6 years after initiation of physical on-site construction of the remedial action." 42 U.S.C. § 9613(g)(2)(B). "The question of whether an action can be characterized as a 'removal' action or a 'remedial' action is one of law appropriate for resolution on summary judgment." *Advanced Micro Devices, Inc. v. Nat'l Semiconductor Corp.*, 38 F. Supp. 2d 802, 809 (N.D. Cal. 1999) (citation omitted).

A removal action is generally a "short-term action taken to halt the immediate risks posed by hazardous wastes."[5] *Advanced Micro Devices, Inc. v. Nat'l Semiconductor Corp.*, 38 F. Supp. 2d 802, 810 (N.D. Cal. 1999). During the removal phase, "a site posing a risk of hazardous waste release is studied and various cleanup options considered." *Id.* In contrast, "remedial actions are

---

[5] CERCLA defines "removal" as

> [T]he cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

42 U.S.C. § 9601(23).

designed to achieve a permanent remedy.[6] *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 287 F. Supp. 2d 1118, 1155 (C.D. Cal. 2003)*; see also Exxon Corp. v. Hunt*, 475 U.S. 355, 360 (1986) (remedial actions under CERCLA are "measures to achieve a 'permanent remedy' to a particular hazardous waste problem"). A removal action is generally taken before a remedial action. *Advanced Micro Devices,* 38 F. Supp. 2d at 810.

The Shiloh Group contends that this is a remedial action and barred by the six-year statute of limitations because remediation began by 1989, when Fluor agreed to remediate the property pursuant the Consent Order. It contends that this is not a removal action because removal actions are generally short-term actions taken to halt immediate risks, but the California Department of Toxic Substance Control has allowed Fluor to leave the contamination in place for the last 25 years, indicating that this is not a short-term action and there is no immediate risk.

Fluor counters that this is a timely removal action because the applicable three-year statute is not triggered until the removal action is completed, which has not yet happened. It contends that its response so far, investigating the nature and extent of the contamination, evaluating the feasibility of various remedial options, and proposing a remedial action plan ("RAP"), fits within the definition of a removal action. Fluor points to its recent submission of an amended remedial action plan to the California Department of Toxic Substances in April 2015, in which it "describes the remedial actions proposed to address soil contamination" at the property. Dkt. No. 237-1 at 11.

Fluor also argues that its claims are timely even if they are subject to the six-year statute of limitations for remedial actions because the claims were brought in January 2015, which is within six years of the Department of Toxic Substance Control's approval of Fluor's initial remedial

---

[6] CERCLA defines "remedial action" as

> [T]hose actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment.

42 U.S.C. § 9601(24).

action plan in 2011, which, Fluor contends, is the earliest the statute could have been triggered. Fluor cites *California ex rel. California Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 671 (9th Cir. 2004), where the Ninth Circuit held that "the initiation of physical on-site construction of the remedial action," which triggers the statute of limitations for remedial actions, "can only occur after the final remedial action plan is adopted." *Neville* concluded that "[t]he Department's suit was brought within six years of the approval of the remedial action plan and is not, thus, barred by the statute of limitations." *Id*.

The Shiloh Group has not established that this action is time-barred under either the three-year statute for removal actions or the six-year statute for remedial actions. First, it is undisputed that any removal action is not complete. The three-year statute for removal actions has therefore not started, much less expired. Second, The Shiloh Group has not pointed to anything earlier than the Department of Toxic Substance Control's 2011 approval of Fluor's remedial action plan which would have triggered the six-year statute for remedial actions. It argues that remediation began by 1989, when Fluor agreed to remediate the property, but it points to nothing in the 1989 Consent Order, or anything else, which constitutes "initiation of physical on-site construction of the remedial action." 42 U.S.C. § 9613(g)(2)(B). My independent review of the Consent Order likewise reveals nothing which would trigger the six-year statute for remedial actions.[7] Since The Shiloh Group has not established that this action is time-barred under either of the potentially

---

[7] The Shiloh Group argues that *Neville*'s holding that the six-year statute for remedial actions can only be triggered "after the final remedial action plan is adopted" is limited to governmental suits. This argument is beside the point because my reasoning does not rely on *Neville*. CERCLA provides that the six-year statute is triggered by "initiation of physical on-site construction of the remedial action," 42 U.S.C. § 9613(g)(2)(B), and The Shiloh Group has pointed to no such triggering event. Moreover, *Neville* explained that adoption of a remedial action plan triggers the six year limitations period because "[t]he first point at which both parties can be certain that any construction is consistent with a permanent remedy is when the permanent remedy is actually selected" – in most cases, "when the final RAP [remedial action plan] [is] approved." *Id*. at 667. The court recognized that this might not apply to private lawsuits because private parties do not necessarily adopt remedial actions plans. But the court noted that even between private parties "there *will* most likely still be a remedial action plan in place," because private parties are encouraged to follow the public notice procedures that apply to government actors. *Id*. at 667 n.3 (emphasis added). Here, there was a remedial action plan, which was approved in 2011, and The Shiloh Group has not pointed to any earlier event which would trigger the limitations period.

applicable statutes of limitation, I do not determine which statute in fact governs this action.

**C. The Shiloh Group is the current owner of the property**

The Shiloh Group contends that it is not the owner of the property within the meaning of section 107(a)(1) because it did not own the property (or even exist) when the cleanup commenced or when the Consent Order was issued by the DTSC. It notes that it is only within the scope of section 107(a)(1) because Fluor delayed the cleanup for years.

I am sympathetic to The Shiloh Group's position that it should not be liable for contamination allegedly caused by Fluor and which Fluor was ordered to clean up years before The Shiloh Group purchased the property. But CERCLA expressly contemplates that current owners of contaminated property are strictly liable for cost recovery, even if they did not cause the contamination, subject only to certain affirmative defenses discussed below. *See* 42 U.S.C. § 9607(b). The Shiloh Group cites no authority authorizing me to inoculate it from cost recovery liability under these facts.

However, while equitable defenses do not come into play in the liability phase of a cost recovery action, they will likely be relevant in the damages phase when response costs are allocated between the responsible parties. *See, e.g., Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 191 F.3d 409, 413 (4th Cir. 1999) ("Potentially responsible persons [in cost recovery actions] are usually subject to joint and several liability, although in some circumstances they can seek division of damages or contribution according to principles of equitable allocation.") (citations omitted); *Jacksonville Elec. Auth. v. Eppinger & Russell Co.*, 2005 WL 3533163, at *11 (M.D. Fla. Dec. 21, 2005) ("equitable considerations might come into play in the damage allocation phase of a CERCLA case"). The Shiloh Group will have an opportunity to present its arguments regarding the equitable allocation of recovery costs.

**II. THE SHILOH GROUP CANNOT PREVAIL ON ANY AFFIRMATIVE DEFENSES**

A person otherwise liable for response costs under CERCLA section 107(a) is not liable if she can prove by a preponderance of the evidence that the release or threat of release of a hazardous substance and the resulting damages were caused by (i) an act of God; (ii) an act of war;

or (iii) an act or omission of a third party, where certain conditions are met.[8] 42 U.S.C. § 9607(b). The third-party defense applies where the release of hazardous substances was caused solely by "an act or omission of a third party other than … one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant[.]" 42 U.S.C. § 9607(b)(3). CERCLA defines "contractual relationship" to include "land contracts, deeds, easements, leases, or other instruments transferring title or possession." 42 U.S.C. § 9601(35)(A). But CERCLA exempts from "contractual relationship" a defendant who acquired the property after it was already contaminated and did not know and had no reason to know about the hazardous substance (the "innocent landowner defense"). 42 U.S.C. § 9601(35)(A)(i).

Fluor argues that the innocent landowner defense does not apply here because although The Shiloh Group acquired the property in 1999, ten years after the Consent Order issued, The Shiloh Group admits that it knew of the contamination at the time of the purchase. *See* The Shiloh Group's answers to requests for admission, Dkt. No. 232-3 at pp. 3-5 (responses to requests for admission nos. 2-5), where it admits that it knew in 1999 that Fluor was involved in government-supervised cleanup. The Shiloh Group does not dispute that it knew about the contamination when it purchased the property. Instead, it contends that it can assert causation-related defenses. But as noted above, causation is not an element of cost recovery liability and causation-related defenses are inapplicable to the liability phase. Causation may be relevant at the damages phase, however, and The Shiloh Group will have an opportunity to present its arguments at that time.

## III. THE SHILOH GROUP'S REMAINING ARGUMENTS LACK MERIT

### A. Fluor properly pleaded a claim for cost recovery

The Shiloh Group argues that Fluor's counterclaim did not state a claim for cost recovery. It contends that "[o]ne searches the Counterclaim in vain for any indication that Fluor is therein claiming to be entitled to recover from TSG any of the expenses Fluor incurred or will incur simply performing under the Consent Order." Dkt. No. 236-1 at 12. I disagree. Fluor's first

---

[8] Defenses under the HSAA are limited to those available under CERCLA. Cal. Health & Safety Code § 25323.5(b).

claim for relief in its counterclaims is labeled "Cost Recovery Under CERCLA § 107(a)." Dkt. No. 202, counterclaims at 21. It alleges, in relevant part:

> 23. CERCLA §107(a), 42 U.S.C.§ 9607(a), provides as follows: "the owner and operator of a vessel or a facility…from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for…any other necessary costs of response incurred by any other person consistent with the national contingency plan…."
>
> 24. Fluor is a "person" as defined by CERCLA § 101(21), 42 U.S.C. § 9601(21).
>
> 25. The TSG Property, or portions thereof, including the Pond Site, the Tower Site, the ditch, or other areas where hazardous substances have come to be located, is a "facility" within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9).
>
> 26. Fluor is informed and believes, and on that basis alleges, that there have been and continue to be releases of hazardous substances at and from the TSG Property within the meaning of CERCLA § 101(22), 42 U.S.C. § 9601(22).
>
> 27. Fluor is informed and believes, and on that basis alleges, that TSG is a liable person, as defined in CERCLA § 107(a)(1), 42 U.S.C. § 9607(a)(1), because it owns the TSG Property where the releases of hazardous substances have occurred and continue to occur.
>
> 28. Fluor has incurred and will continue to incur necessary response costs as a result of releases of hazardous substances at and from the TSG Property.
>
> 29. The response actions undertaken or funded by Fluor have been and will be pursuant to federal and state authorization and approval under CERCLA, and have been or will be consistent with the NCP.

Fluor counterclaims ¶¶ 23-29.

The Shiloh Group did not move to dismiss this counterclaim for failure to state a claim or for any other reason. But in any event, Fluor's allegations include all the elements for liability under section 107(a)(1) and adequately apprise The Shiloh Group of the claim against it.

**B. Fluor does not seek an impermissible advisory opinion**

The Shiloh Group contends that Fluor impermissibly seeks an advisory opinion because (i)

1 it seeks an order that The Shiloh Group is liable for cost recovery but does not identity the costs and (ii) it seeks an order that The Shiloh Group's affirmative defenses cannot prevail but does not specify the claim at issue. I disagree with both contentions. First, Federal Rule of Civil Procedure 56(a) provides that a party may seek summary judgment on a claim or defense or a "part of each claim or defense." Fed. R. Civ. P. 56(a). Fluor seeks partial summary judgment that The Shiloh Group is a liable person under CERCLA section 107(a)—that is "part" of Fluor's cost recovery claim. The amount of costs for which The Shiloh Group is liable will be determined at trial. Second, Fluor argues that The Shiloh Group cannot prevail on any of the three defenses to cost recovery under CERCLA section 107(a): an act of God; an act of war; or an act or omission of a third party. It is therefore clear that the claim at issue is Fluor's first counterclaim, cost recovery under CERCLA section 107(a).

### C. Arguments regarding claims outside of Fluor's motion for partial summary judgment

The Shiloh Group argues that Fluor's claims for declaratory relief and contribution are deficient. But Fluor has not moved for summary judgment on those claims (nor has The Shiloh Group). The Shiloh Group's arguments regarding those claims are irrelevant to this motion.

### CONCLUSION

Fluor's motion for partial summary judgment is GRANTED. Dkt. No. 232. The Shiloh Group is a liable person for cost recovery under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), and the HSAA, Cal. Health & Saf. Code § 25363(e). The Shiloh Group cannot prevail on any affirmative defenses to liability. The amount of costs and the equitable allocation of those costs between Fluor and The Shiloh Group will be determined at trial.

**IT IS SO ORDERED**.

Dated: August 7, 2015



WILLIAM H. ORRICK
United States District Judge